# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 21-2265V

| | |
|---|---|
| CHRISTINE VARDARO,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: January 5, 2026 |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Sara DeStefano*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

  On December 7, 2021, Christine Vardaro filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine administered on October 13, 2020. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Because Petitioner cannot prove that the onset of her pain more likely than not began within 48 hours of her flu vaccine, her Table SIRVA claim must be dismissed. She may, however, have a viable causation-in-fact claim to be adjudicated.

## I.   Relevant Procedural History

The parties reached an impasse in settlement discussions in May 2024. *See* ECF No. 37. Respondent next filed his Rule 4(c) Report on June 11, 2024, contending that "Petitioner has not provided preponderant evidence that the onset of [her] pain occurred within forty-eight hours of vaccination." Rule 4(c) Report at 4. Further, Respondent notes that the first record of treatment indicates onset one week after vaccination and later records "vaguely" describe onset after vaccination without specificity. *Id*.

Petitioner then filed a Motion for Ruling on the Record ("Mot.") on September 23, 2024. ECF No. 43. Respondent filed a response ("Resp.") on December 4, 2024, and Petitioner filed a reply ("Repl.") on December 11, 2024. ECF No. 45-46. The matter is now ripe for adjudication.

## II.   Relevant Facts

*Record Evidence*

Petitioner received a flu vaccine in her right deltoid on October 13, 2020. Ex. 1 at 3. She recalls that her "right shoulder was aching" the following day, but that she "believed that pain at the injection site was normal, and assumed the pain would go away in a few days." Ex. 10 at ¶3. Her pain worsened "by the end of that week," when "it became difficult to move [her] right shoulder and upper arm." *Id*.

On October 16, 2020, Petitioner contacted her primary care provider after concerns for Covid-19 infection exposure. Ex. 3 at 142-143. She had a drive-up Covid-19 test on October 19, 2020. *Id*. at 139-141.

On November 18, 2020 (36 days after vaccination), Petitioner went to urgent care for her shoulder pain. Ex. 3 at 131. She reported having a "a flu shot done on October 12th" and "that 1 week later she developed some right shoulder pain which she thinks may have been caused by the flu shot." *Id*. She explained that "unless she moves the arm or tries to lift her arm up there really is no pain." *Id.* On exam, she had tenderness anteriorly, but full range of motion and negative impingement signs. *Id*. The physician's assistant suspected tendinitis, recommended ibuprofen, and referred Petitioner to orthopedics. *Id*. at 132.

Petitioner had an appointment with orthopedics scheduled for December 15, 2020, but she did not attend. Ex. 3 at 109. She saw an orthopedic physician assistant almost a month later, on January 7, 2021. *Id*. at 101. She reported "right shoulder pain/stiffness for

3 months" that "began soon after receiving a flu shot" and gradually worsened. *Id*. Her exam was "consistent with adhesive capsulitis" and she was referred to physical therapy. *Id*. at 102. She received a steroid injection on February 1, 2021. *Id*. at 93.

Petitioner began physical therapy on February 5, 2021. Ex. 2 at 8. She reported "difficulty lifting [her] arm after [her] flu shot" in October 2020. *Id*. She complained of difficulty with work activities, such as lifting children and pushing strollers, as well as washing her hair and dressing. *Id*. She had impaired range of motion and strength on exam. *Id*. at 9. Treatment was planned for ten weeks. *Id*. at 10. She attended 48 sessions through January 12, 2022. *Id*. at 10-98; Ex. 5 at 2-8.

Petitioner followed up with her orthopedist on April 16 and June 11, 2021. Ex. 3 at 77, 83. She received a second steroid injection on June 29, 2021. *Id*. at 68.

*Witness Statements*

Petitioner's friend, Kathleen O'Neil, provided an affidavit on September 18, 2024, which was filed just before Petitioner's motion for a ruling on the record. Ex. 11. Ms. O'Neil recalled speaking to Petitioner the day after her vaccination. *Id*. at ¶2. She recalled that Petitioner advised her not to get a flu shot "because her right arm, where she received the injection, hurt way more than she expected." *Id.* She remembered Petitioner continuing to mention shoulder pain. *Id*.

Petitioner's co-worker, Brenda Lee Hernandez, provided an affidavit on September 16, 2024. Ex. 12. She recalled that when Petitioner returned to class after receiving her flu shot, "she said her arm hurt and she was obviously uncomfortable." *Id*. at ¶3. She recalled that Petitioner had difficulty with the daily routine at work during the following two days, and beyond. *Id*. at ¶4-5.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

3

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

### IV.     Findings of Fact

Respondent argues that Petitioner has not established Table onset because the record of Petitioner's first visit to urgent care clearly indicates onset outside of the required period. Resp. at 5. Respondent further argues that "Petitioner's affidavit does not provide any grounds . . . to discount the probative value of contemporaneous medical record evidence that was created when Petitioner first sought treatment." *Id*. at 6. Finally, Respondent notes that although later records link Petitioner's pain to her vaccination, none contradict the prior record "nor otherwise establish symptoms within forty-eight hours of vaccination." *Id.*

I acknowledge that the standard applied to resolving SIRVA onset disputes is liberal, and will often permit a determination in a petitioner's favor, especially in the *absence* of contemporaneous medical records to the contrary. However, not every case can be so preponderantly established, particularly where later-in-time claims of immediate onset are offset against records created closer to vaccination.

Here, Petitioner described the onset of her pain as one week after her vaccination the *very first time* she sought treatment – and barely a month after vaccination. Ex. 3 at 131. Petitioner argues that this record is nevertheless consistent with Table onset – stating that it "is entirely consistent with Petitioner's description of how her pain evolved contained within her affidavit." Repl. at 4. But the description of an evolving and progressing pain is inconsistent with the record contention of pain occurring a week after vaccination. *Id*. Petitioner's affidavit does not explain why she reported a one-week onset if her pain, in fact, actually began with vaccination.

Moreover, although Petitioner did relate her pain to her vaccination during subsequent visits, she did not report pain that began within 48 hours after her vaccination. The only other record that provides timing for the onset of Petitioner's pain is from January 7, 2021 when she stated that she had had right arm pain/stiffness for the previous three months. Ex. 3 at 102. While Petitioner reported pain "soon after" or "after" her vaccination, the only record that provides a specific onset places it *outside* of 48 hours after vaccination. See Ex. 2 at 8; Ex. 3 at 101. Thus, the relaxed manner in which the Program construes general assertions of pain beginning vaguely "after" vaccination cannot overcome affirmative record statements of onset well outside the two-day timeframe set by the Table.

Beyond the above, only affidavit testimony supports Table onset. *See* Ex. 10 at ¶3; Ex. 11 at ¶2; Ex. 12 at ¶3. There are situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (*quoting Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). But to prevail, testimony must be "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). But this is not a case with records that use only language such as "after" or "since," and Petitioner has not argued that the earliest record is inaccurate. Thus, I do not find in this case that the witness statements are sufficient to support a decision in Petitioner's favor on onset.

Accordingly, I find Petitioner has not preponderantly established that onset of her pain likely occurred within 48 hours of vaccination – meaning that she cannot proceed in this action with a Table SIRVA claim. Petitioner has, however, a potential causation-in-fact injury claim, so the matter will be transferred out of SPU in order to evaluate such an alternative version of the claim.

## Conclusion

Because Petitioner has not preponderantly established that the onset of her shoulder pain occurred within 48 hours of vaccination, she cannot proceed in this action with a Table SIRVA claim. Petitioner's Table SIRVA claim is therefore dismissed, for the reasons set forth above. The case will be reassigned to a Special Master outside of SPU.

**IT IS SO ORDERED.**

                                                **s/Brian H. Corcoran**
                                                Brian H. Corcoran
                                                Chief Special Master